**EAGLE–PICHER INDUSTRIES, INC., Appellee,**

v.

**OHIO BUREAU OF EMPLOYMENT SERVICES et al., Appellants.**

[Cite as *Eagle–Picher Industries, Inc. v. Ohio Bur. of Emp. Serv.* (1989), 65 Ohio App.3d 548.]

Court of Appeals of Ohio,
Shelby County.

No. 17–88–1.

Decided Dec. 11, 1989.

*Elsass, Schmitt, Wallace & Co., L.P.A.,* and *Richard H. Wallace,* for appellee.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Sonya M. Jones,* for appellant Administrator.

*Swinehart & Princi Co., L.P.A.,* and *Paul R.F. Princi,* for appellant Richard Cavinder.

---

MILLER, Judge.

This appeal is from a judgment of the Court of Common Pleas of Shelby County reversing a decision of the Unemployment Compensation Board of Review and entering final judgment for Eagle–Picher Industries, Inc.

The claimant, Richard Cavinder, was employed by Eagle–Picher Industries, Inc. from November 2, 1977 to September 26, 1986, as a core assembler.

In January 1986, the claimant began Job 407 which required him to make certain castings according to stated specifications.

On September 26, 1986, several castings from Job 407 were discovered to be defective. Subsequently, the claimant was laid off due to lack of work.

On October 3, 1986, claimant was recalled to his previous job. In addition, the record indicates that the claimant was informed by the company that he had produced eighty-six defective castings which represented seventeen production days of work. Further, the claimant was told that if any other mistakes occurred he would be terminated.

On or about October 15, 1986, the claimant, working on a new job, produced eight defective castings.

On October 20, 1986, the claimant was terminated.

Thereafter, the claimant sought benefits from the Ohio Bureau of Employment Services. The administrator disallowed the claim for benefits on the grounds that the claimant was discharged for just cause.

On appeal to the Ohio Unemployment Compensation Board of Review, the board reversed the administrator's decision and allowed the claimant to receive benefits.

The employer, Eagle–Picher, appealed the decision to the Court of Common Pleas of Shelby County. The court reversed the decision of the board of review finding that the decision was "unlawful and unreasonable and not substantiated by the evidence."

Appellant claimant appeals from this judgment, setting forth one assignment of error:

"The court of common pleas abused its discretion by reversing a decision of the board of review granting benefits to the defendant-appellant, who was discharged in violation of company progressive disciplinary policy."

The appellant contends that the board of review's determination that he was discharged without just cause was not against the manifest weight of the evidence, because Eagle–Picher Industries, Inc. failed to follow established disciplinary procedures, and further there was no evidence in the record indicating that the actions of the appellant constituted willful misconduct.

R.C. 4141.29(D)(2)(a) provides:

"(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

" * * *

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work. * * * "

In this case, the appellant was alleged to have violated the company rule that "[c]areless workmanship and/or continued substandard work will not be tolerated."

In *In re Claim of Frazee* (Dec. 13, 1984), Franklin App. No. 84AP–284, unreported, a case similar to the one before this court, the court stated:

" * * * The only basis upon which the claimant relies for justification of his claim rests upon the failure of the employer to apply the rules, which had been established by the employer itself for the proper effectuation of a discharge for cause. By providing a written text, the employer in effect voluntarily curtailed his right to discharge an employee without providing written notice of intent. In *Harp v. Admr. Bureau of Employment Compensation* (1967), 12 Ohio Misc. 34, at 38 [41 O.O.2d 25, 27, 230 N.E.2d 376, 379], Judge Bettman wrote: 'If an employer wishes to discharge an employee for a breach of company rules and expects to claim the discharge is "for just

cause in connection with the employee's work," such rules must be fair *and* they must be administered fairly.'

"Here, the company had informed its employees that they were subject to discharge only after being given a written warning. The failure to do so was tantamount to a waiver of the minor offenses, despite their repetitiveness."

In this situation, there was testimony in the record indicating that Eagle–Picher Industries, Inc. had an established progressive disciplinary policy which provided that when an employee breached company rules, the first notice given to the employee was to be verbal, the second notice was to be written, the third notice resulted in a three-day layoff, and the fourth notice resulted in the dismissal of the employee. Robert Kramer, a representative of Eagle–Picher, testified that the policy was not followed in this case, because of the impact which the appellant's mistakes had on the company.

The representatives of Eagle–Picher testified before the referee that appellant had been informed upon returning to work that any further mistakes would result in his dismissal. Appellant testified that there had been no such warning. The board, at least implicitly, must have chosen to believe appellant's contentions, which was its prerogative.

We must then determine whether the company was justified in failing to follow its own procedures.

In reviewing the record, we find testimony that, on September 26, 1986, the appellant made defective castings and that subsequently was given a four-day layoff. Kramer also testified that the reason for the appellant receiving a four-day layoff was because the company was waiting to hear back from its customer to see if the castings were going to be accepted.

On October 3, 1986, the appellant returned to his original job. On or about October 15, appellant, upon returning to work, produced sixteen castings on another job, eight of which were defective. As a result, the company discharged the appellant.

In the record before the board of review, it is not indicated whether the amount of defective parts produced by the appellant was normal for a core assembler, nor was there evidence establishing what percentage of castings produced were found to be defective.

Kramer testified that the appellant had worked at this particular job since January 1986 and that to his knowledge there had been no other problems with appellant's work.

The standard of review for this court is set forth in *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 161–162, 11 OBR 242, 244, 463 N.E.2d 1280, 1283, as follows:

"The role of an appellate court, in reviewing a determination of a court of common pleas on manifest weight of the evidence on appeal from the board [of review], is different. The function of the court of common pleas, in determining whether the board's decision is against the manifest weight of the evidence, necessarily involves the exercise of sound discretion. Accordingly, an order of the court of common pleas based upon a determination of the manifest weight of the evidence, may be reversed only upon a showing that the court abused its discretion. See *Rohde v. Farmer* (1970), 23 Ohio St.2d 82 [52 O.O.2d 376, 262 N.E.2d 685]. In this context, the meaning of the term 'abuse of discretion' connotes more than an error of judgment; it implies a decision without a reasonable basis, one which is clearly wrong."

We conclude that upon the record before the board of review, the board could reasonably determine that there was no justifiable reason for Eagle–Picher's failure to comply with its established disciplinary policy; and, therefore, the board's finding that appellant was not fired for just cause was not unlawful, unreasonable, or against the manifest weight of the evidence and it was an abuse of discretion for the court of common pleas to reverse the board's decision.

For the reasons set forth above, the judgment of the court of common pleas is reversed.

*Judgment reversed.*

EVANS, P.J., and THOMAS F. BRYANT, J., concur.